# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

DECIDED BY THE FIRST DISTRICT COURT DURING THE
YEAR 1901.

## Chicago City Ry. Co. v. John Tuohy, by His Next Friend.

1. STREET RAILWAYS—*Duty of Motormen.*—It is the duty of motormen to get their cars so fully under control as to avoid accidents where possible, and to give warning or take such other measures as will tend to prevent casualties.

2. NEGLIGENCE—*Not to be Imputed to a Child Six Years of Age.*—It is not to be expected of a boy between six and seven years of age that the same caution and care will be used for his personal safety as will be exercised by a person of mature age, and the law will not impute negligence to an infant of such tender years.

3. CONTRIBUTORY NEGLIGENCE—*Can it be Imputed to a Child Six Years of Age.*—Can contributory negligence be imputed to a child six years of age?

4. ORDINARY CARE—*In Children, a Question of Fact.*—It is a question of fact to be determined by a jury whether, in a given case, a child is in the exercise of proper care, taking into consideration its tender years, intelligence, and other circumstances of the case.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed June 4, 1901.

WILLIAM J. HYNES and SAMUEL S. PAGE, attorneys for appellant.

DARROW & THOMPSON and P. A. HINES, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment recovered by appellee in an action for personal injuries alleged to have been caused by negligence of appellant. At the time of the accident, April 17, 1895, appellee was a boy nearly six years of age. He was struck by an east-bound electric car operated by appellant, which ran over his right leg, necessitating amputation of two-thirds of that part of the leg below the knee. The accident occurred on Thirty-fifth street near the corner of Wood street.

The first controversy relates to the facts. There is evidence in behalf of appellee tending to show that the latter had been in the habit of crossing the car tracks going to and from school for nearly a year prior to the injury; that upon the evening in question he was standing with an older boy on the south sidewalk of Thirty-fifth street about twenty feet east of the corner of Wood street, when, stating that he was going home, he stepped off the sidewalk and walked backward in a northwest direction toward the tracks still talking to his older companion who remained on the sidewalk; that he continued backing in this way a distance of about twelve feet, until he reached the nearest rail—the south rail of the east-bound track—still talking to the boy on the sidewalk; that he did not notice appellant's car which was approaching on that track at a rate of speed variously estimated at from fourteen to sixteen miles an hour, until it was close at hand; that he made an effort to get off the track, but was not quick enough to get out of the way; that he was knocked down, falling south of the south rail, and his right foot was run over; that no bell was rung; that appellee lay at a point about twenty feet east of Wood street and that the car was not stopped until it ran to a point about eighty feet further east.

Appellant introduced evidence tending to prove that appellee had been playing on the street, and that as the car approached he was one of a group of boys standing together about fifty feet east of Wood street; that when the car was within a very short distance, appellee suddenly darted out

from the group and ran across in front of the approaching car; that the motorman saw appellee at the moment he started to run and immediately applied the brake and rang the gong; that the boy was struck near the corner of the car and knocked down so that his foot was run over; that the motorman made a very quick stop, but the car was so close to the boy when he ran out that it was utterly impossible to stop in time to avoid the accident; that the car was stopped so that its rear end was about forty feet east of Wood street, the boy lying just outside the car and a little in front of its rear wheels; that the motorman rang the gong for Wood street as he approached it, the car running at the rate of about seven miles an hour, there being no passengers to get on or off at that point.

Appellee testified that he did not remember how he "got hurt." There were five others of the witnesses called in his behalf whose testimony related to matters tending to show how the accident occurred. The witnesses for the defense were thirty-nine in number, three of whom testified to seeing the accident, and five others to facts claimed to be material. Nine of appellant's witnesses were introduced to testify to admissions said to have been made by appellee himself, and thirteen for the purpose of impeaching other witnesses for the plaintiff. There is direct conflict as to material facts, especially as to how the boy approached the track, the speed of the car, and the distance it ran before coming to a stop after the accident. The jury, whose province it was to determine the truth, and who heard and saw the witnesses, have settled these issues of fact by necessary intendment in favor of appellee. We are urged to set aside their finding, chiefly because it is said appellee's witnesses were successfully impeached. It may be that there are some inconsistencies. It may be that in some respects the sworn statements of the witnesses at the trial differed materially from statements alleged to have been previously made to appellant's agents. Granting this, it is nevertheless true, we think, that there was evidence warranting the finding. It is easy in the discussion of the conduct of wit-

nesses, their character and previous statements, to lose sight of the real issue. That question is, whether the negligence of appellant was the cause of the injury. If the motorman saw, or ought to have seen that appellee, then less than six years of age, was in such situation or so acting as to expose him to danger from the advancing car, of which he was unaware, it was the motorman's duty to get the car so fully under control as to avoid the injury if he could, and to give warning or take such other measures as would tend to prevent the accident. We do not attach great importance to the testimony of those of appellee's playmates who testify to admissions said to have been made by him of late when asked how he lost his leg. The accident occurred April 17, 1895. The trial took place in July, 1899. Appellee swears he does not now remember how he came to be hurt. At his age when injured, this does not appear unreasonable, and the jury were at liberty surely to believe his statement. It is not, we think, inconsistent with his alleged explanation, made apparently some years afterward, to satisfy the curiosity of his playmates who questioned him on the subject. They testify that he made various replies, chiefly to the effect that he was playing tag, and ran across the tracks in front of the car, which he did not see. Granting that this is so, it was still a question for the jury whether appellant's servants were negligent in not controlling the speed of the car under the circumstances. See C. & W. D. Ry. Co. v. Ryan, 131 Ill. 474 (479). But the jury were not bound to believe that appellee's very general statement made casually to his playmates in answer to their questions was intended to give a literal and accurate account of the exact circumstances attending the accident. Any boy would be likely to make some general answer to such questions, and but few boys of appellee's age would take the trouble to state the details with fullness or accuracy. The jury were warranted in disregarding the alleged statement as furnishing reliable evidence of the manner in which the injury was inflicted.

Objection is made to appellee's second instruction, and it

is urged that as the declaration alleges appellee was in the exercise of due care, this was a material averment which should have been proved as laid, and it was improper for the court to instruct the jury, as a matter of law, that the plaintiff was incapable of being negligent. What the instruction says is that the child between five and six years of age " can not, because of his tender years, be guilty of or be charged with carelessness or negligence in respect to the accident in this case, so as to relieve at all any want of due care on the part of the railroad company." Assuming that the evidence shows the child, in the present case, to have been guilty of contributory negligence in walking or running on the track in front of the car without seeing it, still it has not been held of late in this State, so far as we are advised, that contributory negligence can be imputed to a child of such tender years. Had the boy been of an age between ten and fourteen years, a different question would be presented. See Heiman v. Kinnare, 190 Ill. 156. In C. & A. R. R. Co. v. Becker, Adm'r, 84 Ill. 483 (486), it is said:

" It is not to be expected of a boy between six and seven years of age that the same caution and care will be used for personal safety as will be exercised by a person of mature age, and the law will not impute negligence to an infant of such tender years."

In C., St. L. & P. R. R. Co. v. Welsh, 118 Ill. 572 (574), it is said of a child seven years and three months old:

" It is obvious plaintiff was too young at the time she was injured to observe any care for her personal safety."

To the same effect are Chicago & W. D. Ry. Co. v. Ryan, 131 Ill. 474, where the child was much younger, and Met. W. S. L. R. R. v. Kersey, 80 Ill. App. 301. There is another view, to the effect that it is a question of fact to be determined by the jury whether, in a given case, the child is in the exercise of proper care, taking into consideration his tender years, intelligence, and all the circumstances. See Chi. C. Ry. Co. v. Wilcox, 138 Ill. 370 (382), in which both views are stated. The weight of authority in the State

seems to support the former view, which is, perhaps, analogous to the rule by which children under seven years of age are presumed to be incapable of committing crime. The question is, however, apparently still an open one in this State. In Pekin v. McMahon, 154 Ill. 141, it is said (p. 154):

"Whether, as matter of law, a child seven years old or under that age, can be justly held to be incapable of negligence, it is not necessary to decide. But where a child has passed the age of seven years, as was the case with appellee's intestate, we are of the opinion that he is bound to use such care as children of his age, capacity and intelligence are capable of exercising, and that the question whether he has done so or not, should be submitted to the jury."

Whatever may be the final conclusion of our Supreme Court, when the question is fairly presented, we are of the opinion, in the present case, that it does not affirmatively appear from the evidence that appellee was not in the exercise of such care as is usually exercised by, and might be expected from, children of the same age and degree of intelligence, and the jury would not have been warranted in so finding had the question been expressly submitted to them. The instruction complained of was not, at least, harmful in that respect. It is objected that said instruction is not limited to the charges of the declaration, and that it is not sufficient the law is correctly given in other instructions. We are of opinion, however, that negligence other than that charged in the declaration has not been disclosed by the evidence, and that the jury have not been misled by such inaccuracy, especially, as in other instructions, the restriction is correctly stated. W. C. S. R. R. Co. v. Musa, 180 Ill. 130 (132), is applicable in this connection. The further objection that the instruction assumes the defendant to have been guilty of want of due care, does not stand examination. While the wording of the instruction is not in some respects beyond criticism, it could not have misled the jury in that respect.

The objection to the appellee's third instruction, to the

effect that a street railway company "must have due regard for the safety of others, and use every reasonable effort to avoid injury to others," is ingenious. But taking the words in their ordinary acceptation, the word "every," in this connection, is not, we think, equivalent to "all possible." To give it such effect we should have to ignore the word "reasonable," which follows. To require "all possible" effort would not be reasonable. The phraseology is not perhaps wisely chosen, and it is not safe for counsel to rely upon an adversary's instructions to prevent a misconception of language inaccurately used in behalf of their own client. But we are, nevertheless constrained, after careful consideration, to conclude that there is no reversible error in the phraseology complained of. Criticism is made of other instructions given on behalf of appellee, some of which is not without force, and to which we have given that consideration the importance of the case demands. But we are compelled to the conclusion that the alleged defects complained of do not present sufficient grounds to warrant a reversal of the judgment. What has been previously said is applicable in part to the objections urged to instructions as modified and others which were refused.

Objection is further made to rulings upon admission of evidence, to remarks of counsel, and to an alleged discrepancy between the names of the jury as impaneled and as signed to the verdict. It is possible that some of the rulings complained of are technically objectionable, and it appears that the jurors who signed the verdict wrote their names with more fullness and with some changes of letters from the form in which they were set down when impaneled. But it is apparent that the names in both cases were intended to indicate the same persons. As said in West Chicago St. Ry. Co. v. Maday, 188 Ill. 308 (310):

"It is more important in the administration of justice that litigation should end in the attainment of substantial justice, than that a record of the proceedings should be built up which is without flaw or blemish."

Discovering no injurious error in the record, the judgment of the Circuit Court must be affirmed.