## McFARLAND v. ELMIRA WATER, LIGHT & R. CO.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. STREET RAILROADS (§ 117*)—INJURIES TO PERSONS ON TRACK—EVIDENCE—QUESTION FOR JURY.

In an action against a street railroad for the death of a child, who was run over while crossing the track, the question of defendant's negligence *held* one for the jury.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 117.*]

2. STREET RAILROADS (§ 95*)—CARE AS TO PERSONS NEAR TRACK.

It was the duty of a motorman, on approaching a crowd of boys playing tag near the track, to check the speed of the car, so as to have it under control, or at least to drop the fender and to give the usual signals.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 202; Dec. Dig. § 95.*]

3. STREET RAILROADS (§ 117*)—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE OF CHILD.

A boy 8½ years of age, playing tag near a street railroad track, is not, as a matter of law, guilty of contributory negligence in failing to avoid an approaching car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 255; Dec. Dig. § 117.*]

Sewell and Chester, JJ., dissenting.

Appeal from Trial Term, Chemung County.

Action by William H. McFarland, as administrator of Wills McFarland, deceased, against the Elmira Water, Light & Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEWELL, and COCHRANE, JJ.

Knapp & Sebring (James O. Sebring, of counsel), for appellant.

Reynolds, Stanchfield & Collins (Halsey Sayles, of counsel), for respondent.

COCHRANE, J. The plaintiff's intestate, a boy about 8½ years of age, was run over and killed by one of the defendant's trolley cars, and this action is based on the alleged negligence of the defendant in causing his death. The defendant operates a street railroad extending easterly and westerly through West Second street in the city of Elmira. The deceased was attending school in a school building on the northerly side of West Second street and about opposite where the accident occurred. He, with a number of other children, had just been dismissed from school. There is evidence that as the car approached there were about a dozen boys engaged in what was known as a game of "tag," which consisted in running after and trying to catch each other; that some of the boys had run across from the schoolhouse, or northerly side of the street, to the southerly side; and that the deceased was running after them, and endeavoring to overtake them in their game of "tag," as the car approached and struck him. The jury might properly have found that as the motorman of the car approached he saw or should have seen

the boys playing on either side of the street, and some of them running across the street, and that he should have known that, engrossed as they were in their sport, they might not be alert or sensitive to the danger of the approaching car. The car was equipped with a fender, which was caused to drop by a pressure of the motorman's foot in the event of danger or an emergency. That was its purpose. It was the duty of a prudent man as he approached the boys to check the speed of the car, so as to have it under control, or at least to drop the fender and to give the usual signal. The evidence tends to show that he took none of those precautions. There is evidence that the car did not stop at the last street crossing before the accident. It had recently snowed, and it appears that the body of the boy was pushed along, leaving its mark in the snow, for 25 or 30 feet behind the car before it stopped. The car was about 25 feet long, and when it stopped the body of the boy was under it, and 5 or 6 feet forward from its rear end, so that he must have been pushed or rolled along in the snow 30 or 35 feet, and the car must have traveled 50 feet or more after striking him. A former motorman on this same line testified that a car such as the one in question, going at the rate of 15 miles an hour, could be stopped in 35 feet. It also appears that the mark in the snow made by the body of the boy was near the southerly rail of the track, indicating that he had almost made the crossing in front of the car, and was struck about as he was clearing the southerly rail and getting out of danger. Hence the inference is proper, either that this motorman at the time of the accident was operating the car at an unduly rapid rate of speed, or that he was not watchful and attentive to his duty; for, had he been, he would not have traveled 50 feet after striking the boy. It may be that the evidence in its entirety presents a case where conflicting inferences might be drawn; but on this appeal the plaintiff is entitled to the most favorable inferences, and, judged from that standpoint, it cannot be said as matter of law that the defendant was not negligent. The inference is proper that the motorman should have anticipated that these boys playing in the street were in danger, and should have realized that his car was traveling too rapidly in the presence of such danger. The jury might properly have found negligence on his part in operating the car too rapidly, and in not giving any signal of its approach, having in view the possible danger of the boys getting in front of the car, engaged as they were in their sport, and having their minds diverted thereby. Had the speed of the car been checked, the boy might have crossed in safety, as he almost succeeded in doing; and had the proper signal been given, it might have attracted his attention, and prevented him from attempting to cross in front of the car.

On the question of contributory negligence I do not think it can be said as matter of law that a boy 8½ years old is thus guilty under the circumstances here appearing. A boy of that age has not the judgment or mental development which an adult has to make him alert to the danger of a situation. There is evidence that when this boy was engaged in playing his mind was very intense, and not active respecting other things. He may have been so absorbed in his pastime

as to make him forgetful or unmindful of danger, or he may have thought that he could cross in safety the track in front of this car, as he might have done if the car had not been traveling at an excessive rate of speed. These considerations were for the jury. See Stone v. Dry Dock, etc., R. R. Co., 115 N. Y. 104, 21 N. E. 712; Sullivan v. Union Railway Company, 81 App. Div. 596, 81 N. Y. Supp. 449, affirmed 177 N. Y. 525, 69 N. E. 1131; and Finkelstein v. Brooklyn Heights Railroad Company, 51 App. Div. 287, 64 N. Y. Supp. 915.

The judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event.

KELLOGG, J., concurs. SMITH, P. J., concurs in result.

SEWELL, J. (dissenting). The deceased was a bright, intelligent boy, had attended public school two years, had had considerable experiences in this and other cities in crossing street railways, and appreciated to some extent the necessity for caution. His father testified that he had told him repeatedly he should exercise care in being about railroad tracks, and that he "considered him of sufficient age to look out for himself." The accident occurred some distance from the street crossing, on the 18th day of February, 1908, between 11 and 12 o'clock in the forenoon. The only witnesses who saw the accident were three of his companions. Two of them testified that the deceased was struck by the fender as he reached the track. The other one testified that he saw him stumble on the street car track, and fall down, 8 or 10 feet from the car. According to all of these witnesses he ran suddenly and directly from the sidewalk to the track, a distance of 16.1 feet, and that he did not have sufficient time to cross the track when he attempted to do so. One of the witnesses testified:

"I noticed which way he was looking when he ran. When he ran in front of the car, he was looking towards that way. That was toward the car. * * * When he ran, he looked straight ahead, right toward the brick buildings. He didn't stop to look to see if any cars were coming or not. He had a stocking cap pulled down over his ears. He did not stop to look toward the car, or any other way, but started and ran right across."

No testimony was given tending to show the boy looked to the right or the left before attempting to cross, or that he exercised the slightest care to ascertain whether it was safe to make the attempt. It appeared that there was nothing between the curb and track, a distance of 12.5 feet, to interfere with his seeing the approaching car; that it was in plain sight of the deceased, and moving slowly. There was no evidence as to how fast the boy was going; but it would be entirely consistent with human experience to assume that he traveled at the rate of 4 miles an hour. White v. Albany Railway, 35 App. Div. 26, 54 N. Y. Supp. 443. At that rate he reached the track, along which the car was coming, in less than three seconds. There was no proof that the motorman saw the boy as he approached the track; but, if we assume that he did, the testimony as to the close proximity of the car, and that it "would take from 10 to 15 seconds to drop the fender, if everthing was in good working condition," forbids the

conclusion that the motorman could, by the exercise of care, have stopped the car or dropped the fender, in time to prevent the accident.

I think that the plaintiff failed to show, either by direct proof or from the circumstances, that the accident was caused solely by the negligence of the defendant; but, apart from that question, there was not enough to go to the jury upon the question of negligence of the plaintiff's intestate, in that it clearly appeared that his failure to observe the slightest care or precaution contributed to the accident, if it was not the proximate cause. It is true that a child of tender years is not required to exercise the same degree of prudence in the presence of danger which is expected of an adult under like circumstances; but it seems to be well settled that he is not in law excluded from exercising some care in approaching and passing known places of danger. Sobol v. Union Railway Co., 122 App. Div. 817, 107 N. Y. Supp. 656; Weiss v. Met. Street R. Co., 33 App. Div. 221, 53 N. Y. Supp. 449, affirmed 165 N. Y. 664, 59 N. E. 1132; Fenton v. Second Ave. R. Co., 126 N. Y. 625, 26 N. E. 967.

I am of opinion, therefore, that the complaint was properly dismissed, and that the judgment should be affirmed, with costs.

CHESTER, J., concurs.