[No. 7631.]

THE DENVER CITY TRAMWAY COMPANY v. BROWN.

1. EVIDENCE—*Judicial Notice,* taken, that in populous parts of a city, street car tracks may be, and are likely to be, used by children for play. (489)

1. EVIDENCE—*Judicial Notice,* taken, that in populous parts of a railway company for injury to a child, playing in the street. A witness for the defense was cross-examined as to statements attributed to her, as made to one Fuller, on the day of the accident. She denied making the statement. Fuller, examined in rebuttal affirmed the making of the statement by the former witness, and testified that on that occasion, she declared that the defendant was to blame, that they did not give any child any chance to get away. On the authority of *Denver v. Lomovt,* 53 Col. 292 the testimony was held properly admitted. (492,

3. APPEALS—*Verdict Upon Conflicting Evidence.* Where a case has been properly submitted, the weight and sufficiency of the evidence is wholly for the jury, and their verdict will not be set aside except

in case of palpable wrong. Any other rule would invade the consti-
tutional right of trial by jury. (494)

4. ——*Harmless Error.* Action for injuries to a child by the
negligent operation of a street railway car. Evidence was received that
children had been seen playing on the street, in that vicinity, at other
times. *Held* that the jury could not thereby have been misled into any
improper inference. (489)

5. STREET RAILWAY COMPANY—*Duty Towards Children Playing
in the Street.* It is the duty of a street railway company to take
notice that, at any place, children may be occupying the street, in
their play, and it is under duty to exercise a degree of care commen-
surate with the circumstances, and such as would be exercised by a
reasonably prudent person, in like case. And in the populous portions
of a city it must exercise greater circumspection and care.

Where one in charge of a street railway car, sees, or by due care
would have seen, a child of tender years, upon or in near proximity
to the track, it is his duty to sound a warning, and immediately get
his car under such control as to enable him to avoid injury to the
child. (498, 499)

6. NEGLIGENCE—*Imputed.* The negligence of a parent in permit-
ting a young child to play in the public street, where street cars are
operated, is not to be imputed to the child. (493)

*Appeal from Denver District Court.*—Hon. J. W.
SHEAFOR, Judge.

Mr. GERALD HUGHES, and Mr. HOWARD S. ROBERTSON,
Mr. FREDERICK P. SMITH, for appellant.

Mr. STEPHEN W. RYAN and Mr. HORACE N. HAWKINS,
for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is a proceeding to review a judgment of the
district court of the city and County of Denver, awarding
the defendant in error, $7,500.00 as damages in a case of
personal injury.

The plaintiff below, at the time of the accident, was
a child a few days under five years of age. He was
struck and severely injured by one of the defendant com-

pany's cars, causing the amputation of one foot, and other severe injuries. The accident occurred on Cherokee street in the city of Denver, where the defendant company has two tracks, out-going and incoming. This street runs north and south, and the boy was injured by a north bound car. Cherokee street is intersected by the following streets, named in their order from south to north: Cedar, Bayaud, Archer, Ellsworth, Irvington Place and First Avenue.

The accident occurred between Irvington Place and First Avenue. The plaintiff's parents lived in a terrace situated on the northwest corner of the intersection of Cherokee street and Irvington Place. There was a passage-way at the rear or north end of the house. The little boy and a playmate had purchased toy kites, and the plaintiff had called to his mother to come out and see him fly his kite. She went out with him into the passage-way and toward the street, and just prior to the accident was on or near the sidewalk next to their home, which was on the west side of Cherokee street. The boy started into the street going in a southeasterly direction toward the car tracks, looking backward at the kite that he was attempting to fly. The north bound car came along and struck him causing injuries. The acts of negligence relied on are: the failure to sound a gong or bell, or to otherwise give warning; that no brakes were applied, and no attempt made to stop the car until after it struck the boy; and, that by the exercise of due diligence the motorman could have seen the danger to the boy in time to have avoided the accident. The testimony justifies the conclusion that the boy started backward into the street, not directly toward the tracks, but in a diagonal direction leading toward the tracks, and facing or looking back at the kite which was attached to a short string about three feet long and which he held in his hands.

As to the rate of speed at which the boy was proceeding, how long he stopped on the sidewalk, or if he did so at all, there is a conflict of evidence, and this was submitted to the jury under proper instructions. It is not

within the province of this court, in the absence of palpable wrong, to disturb the finding of the jury.

The distance from the house line to the inner rail upon which the car was running was about forty feet. In the diagonal direction in which he proceeded, this distance would be greater. After striking the plaintiff, the car proceeded about one hundred and twenty feet before it was stopped. It appears that the car had not stopped for any purpose, for a distance of about three blocks, and did not stop at Irvington Place, the last street crossing, before the accident. This statement of fact is not given as evidence of or constituting negligence, but as showing one of the surrounding circumstances. The tracks at that point are upon substantially level ground with a clear view along the street for three or four blocks distant from the point where the accident occurred. The evidence shows the car to have been running at normal speed, estimated by defendant's witnesses, at from twelve to fifteen miles per hour.

The testimony is very conflicting. The contention of defendant below, was that the boy darted suddenly from a position of safety on the sidewalk out into the street, and run into the side of the car. That of the plaintiff, that at the time of the accident he was in a position of danger, which by the exercise of due care, could have been seen by the motorman in time to have prevented the injury, and that the boy was in front of the car when he was struck.

At the close of plaintiff's testimony the defendant moved for a directed verdict, and again for a non-suit, and at the close of all the testimony the defendant again moved for a directed verdict, all of which motions were denied by the court, and these rulings, among others, are assigned as error in the case.

The testimony of plaintiff's witnesses shows that the boy was struck by the fender of the car while he was at a point between the rails of the track upon which the car was running. The testimony of the defendant's witnesses tends to show that he ran directly into the car at

the side of it, and at a point where the number of the car was placed, being on the side of the front part of the car, which was enclosed. The rear portion of the car was open and furnished with cross seats, while the front part of the car was enclosed and with seats running along the side. There is testimony to show that the lower part of the figures constituting the number on the car, between which it is testified the boy struck the car, is very much higher from the ground than the height of the plaintiff, and this together with the character of the injuries sustained, may well have caused the jury to doubt testimony to the effect that the child run into the side of the car.·

The mother of the boy, and other witnesses, testified that the car did not stop at Irvington Place, and that no gong or bell was rung, nor brakes applied, nor other warning of its approach. Mrs. Brown, the mother, testified that she was looking at the child as he was trying to fly his kite and supposed that when he left the curbing he intended to go down the street, that she did not hear the car, and that there was no warning whatsoever of its approach. Also, that there was sufficient time for the motorman, after he could have seen the danger, to have stopped the car and prevented the injuries.

There was also the testimony of witness Maher, who says that he was a passenger on the car and boarded it at a point three or four blocks from the accident; that during that time and shortly prior to reaching Irvington Place, somebody in the car called to the motorman, who opened the door between the car proper and the vestibule, and with his face turned to the inner part of the car, engaged in a conversation with a passenger; but that the witness was reading a paper or magazine and could not say that the motorman was so engaged either at the time of the accident or at the time of crossing Irvington Place.

This testimony was denied by the motorman and is not corroborated by any other witness, although there

were but two other persons in the particular compartment of the car.

There is an assignment of error as to other testimony of this witness, to the effect that he had for a long time passed over this street on the car each day going to and from his work; and that it was customary for children to be playing in and about the street at the place where the accident occurred.

It appears from the evidence also, that there were some vacant lots just across Cherokee street from plaintiff's home, and on the corner, commonly used by children as a play ground, and where some were playing at the time of the accident. It is urged by the plaintiff in error that this evidence establishes the existence of conditions at other times, disconnected from the time of this accident, and for the purpose of establishing what care the motorman should have exercised under the particular circumstances shown to have existed at the time this accident occurred, and had for its object and purpose the fixing of a standard of care and caution not in accordance with the conditions confronting the motorman on the occasion in question, but upon other occasions. This contention cannot be sustained, for there was no other particular occasion suggested in the testimony, and no other fact than that the street had been used by children in crossing and for play at other times. In fact the testimony amounts to but little if anything more than a commonly known fact, derived from experience, and of which courts take judicial knowledge, that in populous portions of the city, street car tracks may be and are likely to be, obstructed by children using the street for play and otherwise. There is no testimony in the case that indicates that at the time of the accident, or at any other time there were other children in a position of danger save and except in the case of the plaintiff. So that the jury cannot have been mislead into drawing any inference to the effect that there was at some other time any particular or specially dangerous occurrence. It is en-

tirely competent in such a case to show that the accident occurred in a thickly populated portion of the city. And it is but a natural and lawful inference, to be drawn therefrom, that children are likely to play in the residence streets where the city is so thickly populated, so that the testimony in this case amounts to no more than what the jury might have justly inferred.

The court very properly instructed the jury as to the law in this regard as tending to define ordinary care under such circumstances, as follows:

"That in the operation of such cars it is the duty of the defendant company to recognize that children may from time to time be occupying and using the said streets. That the degree of care which must be then exercised by the defendant is that which is commensurate with the circumstances of such use, as the same would be taken into consideration by a reasonably prudent person engaged in the operation of such cars. That in populous portions of the city it is the duty of the company to exercise added care and watchfulness, lest the track should be obstructed by children using the street either for play or otherwise, and that in general the degree of care which the company must exercise, under all of the circumstances, may be defined to be that degree of care which would be used by an ordinarily prudent person to prevent the happening of injury."

The case does not come within the rule announced in *Denver City Tramway Co. v. Cowan,* 51 Colo. 259, 116 Pac. 136, for that had to do with testimony as to another and different accident, and in another and different place, and involves an entirely different principle of the law. Examples illustrating the general rule of law as to negligence in cases similar to the one at bar, are given by Mr. Nellis in his work on Street Railways, as follows:

"Where a motorman sees or ought to have seen, that a child less than six years of age is in such a situation or so acting as to expose him to danger from an advanc-

ing car, of which he is unaware, such motorman should
get the car so fully under control as to avoid injury, and
give warning and take such other measures as would pre-
vent injury.  A motorman cannot assume that a child
seven years old, hurrying toward the track, and looking
in the opposite direction, will not go on the track in front
of the car.  The courts have held that  *  *  *  where
a child two years old was walking on a street car track
toward a car approaching on an adjoining track, and
crossed over onto such track about two lengths in front
of the car, and was run down, there being nothing to ob-
struct the view of the motorman, a finding that he was
negligent was justified; that where an electric car, which
ran over and killed a boy six years old, was running near
a schoolhouse, where children were on the street, at a
rate of 25 miles an hour, without notice, by gong or other-
wise, a verdict for the plaintiff was sustained by the evi-
dence; that where defendant's street car was running
slowly, and plaintiff, a child four years of age, walking
from the direction the car was coming, went obliquely
on the track about twelve feet ahead of the car, and, al-
though persons shouted to the motorman, he either looked
toward them or was talking to another employe, and the
child was struck and injured, the motorman was guilty
of negligence.  And the motorman of an electric car is
not, as a matter of law, free from negligence in running
over a child 2½ years old, who, after crossing the track
a few feet in front of the car, suddenly turned back on
the track, where the car was going slowly and was dis-
tant 50 or 100 feet when the child left the sidewalk; nor
in running over and killing such a child, who is on the
track in the middle of a block where just before the acci-
dent his face had been turned away from the track while
talking to a passenger, and no signal of the approach
of the car was given.  Nor is the motorman of an elec-
tric car free from negligence, as a matter of law, in run-
ning a car at the rate of 10 miles an hour through a street
crowded with children on which his view in front was un-

obstructed, with his eyes fixed on one child only; nor in failing to see a child less·than 2½ years old until she was in front of and almost under the car, when a passenger saw her start across the street before the car started.''

Another assignment of error is the admission of certain testimony on rebuttal of a witness named Fuller. A witness for the defendant, Mrs. Towns, testified in substance that she saw the boy come from between the two terraces and start to run with the kite, looking back, and strike the side of the car right at the number; and that she saw him fall along the side of the car. This would indicate that the boy ran suddenly out, and into the car, and in that respect is in conflict with the testimony of the plaintiff's witnesses, and tends to support the theory of the defendant as to the proximate cause of the accident.

Upon cross examination the witness was asked as to the substance of her statements alleged to have been made in a conversation with Fuller, had in his grocery store on the day following the accident, and which statement she denied making.

On rebuttal Fuller testified as to this conversation and said: ''I talked with Mrs. Towns the next morning after the accident, and she said the tramway company did not give him any show. They did not ring their gong nor give him a chance to get away. The tramway was to blame.''

It is argued that this statement by Mrs. Towns to Fuller, was a mere expression of opinion and does not conflict with any statement of fact in her direct testimony, and that the admission of Fuller's testimony as to the statement, was highly prejudicial to the defendant.

This question was determined adversely to the contention of the defendant by this court in the case of *Denver City Tramway Co. v. Lomovt*, 53 Colo. 292, 126 Pac. 276. In that case a witness testified for the defendant

and was asked if he did not say at the time of the accident, that the motorman ought to be lynched, which alleged statement he denied.  Upon rebuttal two witnesses were permitted to testify that he did make such a statement.

Mr. Justice Hill, after an extensive review of the authorities, said:

"Applying the general principles announced in the books heretofore cited, to the facts here, we think this alleged statement of the witness Murray was of such a character that the jury might rightfully draw the inference that it was equivalent to a declaration that the motorman was negligent in the operation of his car, and was therefore inconsistent with his testimony at the trial, and under the circumstances of this case was proper as an inconsistent statement as affecting the credibility of his evidence."

Complaint is made as to error in instructions given and refused, but we find no error in this respect.  An examination of all the instructions discloses that they are very complete, and appear to have been considered by the court with unusual care as applied to the facts in the case, and with due regard to the contentions of both plaintiff and defendant.

The plaintiff in error also assigns as error the refusal of the court to accept the doctrine of imputed negligence and in giving the following instruction:

"No. 2.   The jury is instructed that you will entirely disregard the defenses sought to be interposed by the defendant of the negligence of plaintiff's parents, or either of them, at the time when, and the place where, the injury occurred."

We cannot sustain the doctrine that the negligence of the parents of a child of tender years, shall be imputed to the child, first announced by the New York courts, and since followed by courts in some jurisdictions.  That doctrine seems not only unsound, but absurd and inhuman.

In 29 Cyc. 553, it is said in the text: "According to the great weight of authority, in an action brought for the benefit of a child who has sustained injuries through the negligence of another, negligence on the part of the parents, or those standing in *loco parentis* will not be imputed to the child nor bar a recovery by him. The rule announced in *Hartfield v. Roper,* has received severe condemnation in many of the courts repudiating it as authority, and is very generally regarded as unsound by text-writers. In his work on negligence Judge Thompson says: 'That it should be adhered to in any enlightened jurisdiction with respect to children is a reproach to the judges who uphold it. An adult person, when he commits his person to the custody of another, does so at least voluntarily; an infant does not select his custodian—it is selected for him by the laws of nature, or by circumstances beyond his control. Certainly, there is no reason why the ordinary principle that where one is injured by the concurring negligence of two persons, he has an action against either or both, should not apply in the case of an injury to a child, unless the imputation is to be put upon the law of denying to feeble and helpless infancy the same measure of protection which it accords to adults. Such a conception is cruel, heartless, and wicked. It can only hold in jurisdictions where property is placed above humanity.' "

It is clear that the real contention in this case is as to the weight and sufficiency of the evidence to sustain the verdict. But when a case has been properly submitted to the jury, this matter is wholly within its province, and is one with which appellate courts can ordinarily have nothing to do. The jury is a constitutionally organized body, with powers none the less positive and absolute in character, because they are limited in scope. The jury is as much an integral part of our system of jurisprudence as are the courts. It has its separate province, duties, and prerogatives. These have been well defined and well understood since the adoption of

the jury system. For courts to trespass upon, assume or usurp the prerogatives of the jury, is to that extent, to invade the constitutional guaranty of the right of trial by jury. Doubtless many mistakes and errors of judgment have occurred upon the part of juries. But it can be said that courts are not guiltless in that respect. Perhaps the members of this court, sitting as jurors, may have reached a different conclusion in this case, but that would have been in the exercise of their judgment as jurors. Courts may not lightly set aside the united judgment of men constituting a jury, and are not justified in doing so, except in case of palpable wrong. Neither must we overlook the fact that the learned trial judge in this case, four times passed upon the question of the sufficiency of evidence in the case, required to authorize its submission to the jury for determination. And this was done with the apparent very clear understanding of the universal rule of this court in that regard, for in passing upon the question the court declared:

"As a matter of fact, I think there is sufficient evidence to go to the jury. If it was clear to me that there was no evidence at all, I should not hesitate to perform the duty that devolves upon me, but when I think there is evidence, as there is in this case, I shall overrule the motion."

We have carefully read all the testimony in the case and are clearly of the opinion that the court was fully justified in this conclusion.

By the constitution, trial courts are in general made the one forum of litigants subject to review only, by appellate courts as to errors occurring. The constitution especially confers original jurisdiction upon district courts to try all cases, both at law and in equity, whatever may be the magnitude. This court must appreciate the power, dignity and responsibility of trial courts, so contemplated by the fundamental law, and are bound to pay due respect to the judgment of such courts, particularly as applied to a matter of review of the evidence presented

to the jury, and in the hearing of the court. Finding no substantial error occurring upon the trial, the judgment is affirmed.

MUSSER, C. J., and GARRIGUES, J., concur.

### On Motion for Re-Hearing.

Counsel for appellant in their brief in support of their motion for re-hearing, lay stress upon the contention that the instruction quoted in the opinion requires a higher degree of care than is justified by law or precedent, and say:

"This conclusion of the court, if allowed to stand, will have a far-reaching effect on the trial of all damage cases, in that it will require, upon the part of the employees in charge of a car, that the same should be operated at all times upon the theory that children may come upon the tracks. This is contrary to all established principles, for the reason that in operating a car, or any other vehicle, the degree of care required in being watchful for the safety of children is of a higher character than that generally applicable, and is only brought into play when children are either actually seen upon the track or when in the exercise of reasonable care they should have been seen."

Courts have used various expressions as to the degree of care required in such cases. Thus in the following cases the term "ordinary care," is used: *Hanley v. Ft. Dodge Light & Power Co.*, 133 Iowa, 326, 107 N. W. 593, 110 N. W. 579; *United Rys. & Elec. Co. v. Carneal*, 110 Md. 211, 72 Atl. 771; *Galveston City Ry. Co. v. Hanna*, 34 Tex. Civ. App. 608, 79 S. W. 639. And in other cases "high degree of care": *Bergen Traction Co. v. Heitman*, 61 N. J. Law, 682, 40 Atl. 641. And, again, "highest degree of care": *Murray v. Patterson Ry. Co.*, 61 N. J. Law, 301, 39 Atl. 648.

Notwithstanding these differing expressions as to the degree of care required, they all amount to this, that the

person in control of the car must exercise such care as a reasonably prudent man would exercise if placed in the same situation and surrounded by the same conditions.

What would be the requisite degree of care under one state of circumstances would not be under another. What would be reasonable conduct on the part of a motorman where his car is proceeding through a wide thoroughfare with children playing upon the sidewalk many feet distant, would not justify the standard where the street is narrow and the sidewalk much nearer the track. In such a case it is the proximity of the sidewalk to the track which bears upon the question of negligence in the operation of the car and not the broad statement that danger need not be anticipated where the child is playing upon the walk. Each case must depend upon the circumstances and conditions surrounding it, and the question of negligence is to be determined by these circumstances and conditions, and what a reasonably prudent man would have done in the same situation.

There is evidence in this case from which the jury might reasonably conclude that the motorman by the exercise of diligence could have seen the child at such distance in advance as to have stopped his car if under proper control, and to have avoided the accident.

And where children are upon the street through which a car runs the law imposes upon the motorman the duty of keeping the car under such control as a reasonably prudent man would exercise under the same circumstances and conditions.

What would be a reasonable rate and degree of control consistent with the proper degree of care required in some cases might, under a different state of facts, amount to negligence. Bringing the car to a full stop may, under certain conditions, be the only course which fulfills the requirement set, while in others it is only necessary that the car should be under such control that it may be brought to an immediate stop. *Sheffield Co. v. Harris* (Ala), 61 So. 88; *Chicago City Ry. Co. v. Tuohy,* 196 Ill. 410, 63 N.

E. 907, 58 L. R. A. 270, affirming 95 Ill. App. 314; *Danna v. City of Monroe,* 129 La. 138, 55 South. 741; *Gray v. St. Paul City Ry. Co.,* 87 Minn. 280, 91 N. W. 1106; *Simon v. Metropolitan St. Ry. Co.,* 231 Mo. 65, 132 S. W. 250, 140 Am. St. Rep. 498; *Cytron v. St. Louis Trac. Co.,* 205 Mo. 692, 104 S. W. 109; *Meeker v. Metropolitan St. Ry. Co.,* 178 Mo. 173, 77 S. W. 58; *Wagner v. Metropolitan St. Ry. Co.,* 79 App. Div. 591, 80 N. Y. Supp. 191; *McFarland v. Elmira Water, Light and Railroad Co.,* 136 App. Div. 194, 120 N. Y. Supp. 292; *Tatarewicz v. United Traction Co.,* 220 Pa. 560, 69 Atl. 995; *Galveston City Ry. Co. v. Hanna,* 34 Tex. Civ. App. 608, 79 S. W. 639; *Monrean v. Eastern Wisconsin R. & L. Co.,* 152 Wis. 618, 140 N. W. 309.

There can be no hard and fast rule as to the exact rate of speed or degree of control to be exercised where children are in the street but there is a rule applicable in all cases, that the motorman must operate his car at the rate of speed, and have it under such control, as a reasonable prudent man would if placed in the same circumstances. The question of negligence must in each case, be determined by the facts and circumstances as they existed at the time of the accident.

When a child is in a position of danger, the motorman has no right to speculate as to what the conduct of the former may be. He has no right to assume under such circumstances, that the child will abandon such position and proceed to one of safety, and continue regardless of the peril, to operate his car, acting upon such assumption. His belief as to what the child will do will not relieve him of his duty to exercise the required care and control over his car. *Citizens' St. Ry. Co. v. Hamer,* 29 Ind. App. 426, 62 N. E. 658, 63 N. E. 778; *Simon v. Metropolitan St. Ry. Co.,* 231 Mo. 65, 132 S. W. 250, 140 Am. St. Rep. 498.

It is likewise the duty of the motorman, and particularly in a thickly populated portion of a city, to keep a careful lookout at all times to see whether a person is upon the tracks or by reason of his approaching them, is in a position of peril. While this rule is not confined to

children, it is all the more important to be observed in such case, and a proper performance of that duty carries with it the obligation of the motorman to exercise his power of observation for the purpose of discovering whether children are in a dangerous position either upon or near the tracks. *Hanley v. Ft. Dodge Light & Power Co.*, 133 Iowa, 326, 107 N. W. 593, 110 N. W. 579; *Louisville Ry. Co. v. Bryant*, 142 Ky. 159, 134 S. W. 182; *Baird v. Citizens' Ry. Co.*, 146 Mo. 265, 48 S. W. 78; *Bergen County Traction Co. v. Heitman*, 61 N. J. Law, 682, 40 Atl. 641.

The jury in this case was fully justified in finding that the motorman did not ring the gong or give other warning of the approach of the car, and plaintiff in error now contends that inasmuch as the car was not immediately approaching a street, it was not its duty to ring the gong. This is not the law. Whenever a car of a street railway company is rapidly approaching a point in the highway where existing conditions render it apparent that the danger of injury to the public will be materially lessened by sounding the bell, it is the legal duty of the company and its motorman to sound the bell, and the failure to do so is negligence. *Murphy Administrator v. Street Railway Co.*, 73 Conn. 249, 47 Atl. 120. It is clearly as much the duty to make this effort to minimize or avoid danger at any place on the highway as at street crossings. Indeed, the placing of the gong upon the car may be regarded as recognition by the company of the duty to keep a careful lookout.—*Consolidated City & C. P. R. Co. v. Carlson*, 58 Kan. 62, 48 Pac. 635; *Gray v. St. Paul City Ry. Co.*, 87 Minn. 280, 91 N. W. 1106; *Butler v. Metropolitan St. Ry. Co.*, 117 Mo. App. 354, 93 S. W. 877; *Byrnes v. Brooklyn H. R. Co.*, 148 App. Div. 794, 133 N. Y. Supp. 243; *Hoon v. Beaver Valley Traction Co.*, 204 Pa. 369, 54 Atl. 270.

It is quite true that accidents frequently occur as the result of a child suddenly leaving a place of safety and darting upon the tracks. And that while a motorman

may not speculate as to the course a child may pursue, yet where he sees one at such a distance from the track as to be in no danger and there is no apparent intention of the child to abandon that position, a failure to run the car at the same rate of speed as where one is dangerously near the track or to have the car under the same degree of control as would be required in the latter case, will not constitute negligence.—*Perryman v. Chicago City Ry. Co.*, 242 Ill. 269, 89 N. E. 980, affirming 145 Ill. App. 187; *Cloud v. Alexandria Elec. Rys. Co.*, 121 La. 1061, 46 South. 1017, 18 L. R. A. (N. S.) 371; *Rollo v. City Elec. Ry. Co.*, 152 Mich. 77, 115 N. W. 727; *Graham v. Consolidated Traction Co.*, 64 N. J. Law, 10, 44 Atl. 964; *Holdridge v. Mendenhall*, 108 Wis. 1, 83 N. W. 1109, 81 Am. St. Rep. 871. But this was an issue of fact presented to the jury in this case, and the finding was against the contention of the plaintiff in error.

It will be seen from a review of the authorities cited, that neither the trial court nor this court in the opinion, has extended nor enlarged the doctrine of degree of care required in such cases beyond that sustained and announced by the overwhelming weight of authority.