# ABRAHAM SIMON et al. v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division Two, November 29, 1910.

1. **NEGLIGENCE: Person Moving Towards Car: Instruction: Child.** A statement in an instruction "that the fact that a person leaves the sidewalk and comes near the track of a street railway, is not enough in itself to impose the duty on the motorman to stop the car; that there must be something noticeable in the conduct of the person coming towards the track to apprise the motorman that such a person is about to enter into a place of danger, to make it incumbent upon the motorman to stop the car," is well enough when the person is an adult; but it is not applicable to a girl of the tender age of four years and three months. The law is that when a child of tender years is seen by the motorman to approach the track in front of the car, then he sees the child is in a perilous or dangerous position. [Disapproving Gabriel v. Railroad, 130 Mo. App. 656, on this point.] A child of such age is in peril from the moment she leaves the sidewalk and starts toward the track.

2. ———: ———: **Child: Momentary Stop.** The fact that a four-year-old child left a place of safety on the sidewalk and started to cross the street, was enough to warn the motorman that it might capriciously proceed upon its journey, and enough to cast on him the duty of stopping his car until the danger to her was past; and if the child made a momentary stop or hesitation, whether from confusion by other passing vehicles or indecision, he is not excusable, if thereafter only he used ordinary care to prevent the accident. It must have been such a stop as gave him the idea that she did not intend to go forward.

3. ———: ———: ———: **Assumption of Fact.** An instruction which assumes that there was evidence that the motorman saw the child leave the sidewalk and stop, when he testified that he first saw her when she was only a few feet from the track, and other witnesses testified he was looking in an opposite direction, and one of defendant's witnesses testified he did not think the motorman saw her at all, is erroneous; and an instruction which says, "If the motorman after seeing the child start towards the track after making her last stop in the street used ordinary care with the means at hand

231 Sup.—5.

to stop said car and to prevent a collision with the child," then defendant is not liable, is such an instruction.

4. ———: ———: ———: **Eliminating Other Issues.** Said instruction is also erroneous in eliminating every other fact and issue from the jury's consideration except ordinary care after seeing her stop—there being evidence tending to show the motorman was negligent in not seeing the child at all, in not ringing the bell and in not heeding the halloos of bystanders warning him of the child's peril.

5. ———: **Erroneous Instructions: Verdict for Right Party.** Where the instruction was erroneous, harmful and probably brought about a verdict for defendant, and no demurrer to the evidence could have properly been sustained, the court will not hold that the verdict was for the right party, for under such circumstances plaintiffs are entitled to have the jury pass upon defendant's negligence under proper instructions.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

*John H. Lucas* and *Chas. N. Sadler* for appellant.

(1) Instruction 3A, given on behalf of defendant, is the law, was properly given in the first instance, and the court erred in granting a new trial to plaintiff on account of said instruction. Heinzle v. Railroad, 213 Mo. 102; Reno v. Railroad, 180 Mo. 469; Cornovski v. Railroad, 207 Mo. 263; Gabriel v. Railroad, 130 Mo. App. 651; Boland v. Railroad, 36 Mo. 484; Spillane v. Railroad, 135 Mo. 420. (2) The court erred in refusing to give the peremptory instruction in the nature of a demurrer offered by defendant at the close of plaintiff's evidence, and again at the close of all the evidence; therefore, it was error to grant a new trial in any event. Heinze v. Railroad, 115 Mo. App. 667; Gabriel v. Railroad, 130 Mo. App. 657; Boland v. Railroad, 36 Mo. 484; Spillane v. Railroad, 135 Mo. 420; Payne v. Railroad, 136 Mo. 570. (3) The verdict of

the jury herein being for the right party, and the only verdict that could be permitted to stand, should not have been set aside by the court and a new trial granted, even though it was error to give instruction 3A.  R. S. 1899, sec. 865; Quinn v. Railroad, 218 Mo. 545; Mockowik v. Railroad, 196 Mo. 568; Baustian v. Young, 152 Mo. 325; Bassett v. Glover, 66 Mo. 381; U. S. Mtg & Tr. Co. v. Crutcher, 169 Mo. 458; Fairbanks v. Long, 91 Mo. 628; Cass County v. Bank, 157 Mo. 137; Bushey v. Glenn, 107 Mo. 331; Henry v. Railroad, 113 Mo. 526; Moore v. Railroad, 176 Mo. 545; Burns v. City, 131 Mo. 372; Swope v. Ward, 185 Mo. 329; State v. Jennings, 134 Mo. 281; Carr v. Railroad, 195 Mo. 224; Wabash v. Sloop, 200 Mo. 198.

*Leon Block* and *Daniel O'Byrne* for respondents.

(1) Instruction 3A given on behalf of defendant is not the law, was improperly given in the first instance, and the court did not err in granting a new trial on account of said instruction.  Heinzle v. Railroad, 213 Mo. 102; Cytron v. Railroad, 205 Mo. 692; Wahl v. Railroad, 203 Mo. 275; Holmes v. Railroad, 190 Mo. 98.  And a very similar case, which decides that the curb line is the danger line is Cornovski v. Railroad, 207 Mo. 263.  (2) The court did not err in refusing to give the peremptory instruction in the nature of a demurrer offered by defendant at the close of plaintiff's evidence, and again at the close of all the evidence.  See cases cited under point I.  (3) The action of the trial court in granting plaintiffs a new trial will be affirmed if plaintiffs (respondents) can show in this court that other instructions not criticised in the trial court are erroneous.  Instruction 8 and the last portion of instruction 4 are erroneous, because there was absolutely no evidence that the plaintiffs were in any way negligent.  By giving these instructions the court gave the jury to understand that

there was some evidence that the plaintiffs themselves were negligent in some way, while there was no evidence that plaintiffs were negligent in any way. The fact that the law was correctly declared by our instructions does not cure the errors in defendant's instructions. The instructions are thus rendered contradictory. Livingston v. Railroad, 170 Mo. 452.

GANTT, P. J.—This is an appeal from an order of the circuit court of Jackson county granting the plaintiffs a new trial.

The action was for ten thousand dollars, brought by the plaintiffs for the death of their minor daughter. The trial resulted in a verdict for the defendant, and the court set aside the verdict and granted plaintiffs a new trial on the ground that the court erred in giving instruction "number 3A" on behalf of the defendant.

The petition stated that the plaintiffs were husband and wife and respectively the father and mother of Sarah Simon, who was at all times a minor and unmarried; that the defendant was at all the times mentioned a corporation operating an electric car line over and upon the streets of Kansas City, among other streets an electric car line and electric cars over and upon Third Street between Walnut and Grand Avenue; that on or about July 11, 1905, about five o'clock in the afternoon, on said Third Street and about sixty feet west of Grand Avenue, Sarah Simon, the minor child of plaintiffs, while attempting to cross said Third Street from the south side thereof to the north side thereof, the said Third Street running east and west, was run into, her left leg fractured, and she was terribly injured otherwise, by an electric car which was then and there run, conducted and managed by the employees of the defendant, and as a result of said injuries said Sarah Simon died within ten hours thereafter. That the said Sarah was thus run into and injured by

said car through the negligence and unskillfulness of the servants and employees of the defendant whilst running and managing said electric car in this: First, the motorman of the said car and in charge thereof negligently failed to sound any bell or give any other warning of the approach thereof; second, the said motorman failed to stop the said car within a reasonable time after he saw the dangerous situation of the said Sarah; third, that the said motorman negligently failed to stop the said car within a reasonable time after he might have seen the dangerous situation of the said Sarah; and, fourth, that the agents, servants and employees of said defendant negligently failed to attach a good and sufficient fender to the front end of said car, which in the exercise of ordinary care they should have done.

The answer was a general denial and a plea of contributory negligence on the part of the said Sarah Simon and the plaintiffs directly contributing to the injury of the said Sarah.

The evidence tended to show that on July 11, 1905, the plaintiffs resided on the north side of Third Street just east of the alley between Walnut Street and Grand Avenue in Kansas City. They were the parents of several minor children, and among them the deceased child Sarah, aged four years and three months. The father conducted a clothes pressing shop at said place, and his family lived in the rear of it. Third Street runs east and west. Almost directly across the street from the plaintiff's business place and home, Mrs. Barman, with her husband, conducted a millinery establishment. In the afternoon of the 11th of July, 1905, Mrs. Barman, who testified she was a childless woman, went over to the plaintiffs' residence and on the parents' consent took their three minor children across the street to her business place. They played around her establishment inside of the house or store. She had the youngest child on her knee and

did not notice that Sarah had gone outside until she heard the shouts and cries in the street about five o'clock that afternoon. She went out and found that Sarah, the deceased child, had been struck and run over by an electric car. There was no one on the car except the motorman and conductor. She testified that the child was never permitted to cross the street unaccompanied.

George Chapman testified that he was walking along Third Street, proceeding east, between Walnut Street and Grand Avenue, on the south side of the street, and passed the little girl Sarah about the time she was leaving the curb to cross the street; that at the time the child first started in the street, the car was at the Walnut street curve; that he stopped four or five feet after he passed her and leaned against the iron post, one of the posts that supports the electric line of the defendant. He saw the child standing four or five feet from the curb in the street; that the child started again, and when she did so the car was about to the vacant lot west of the alley. He saw she was in danger; there was no object between the child and the street car. The witness heard no bell, and the car's speed was about five or six miles an hour. The child toddled, did not run. She was dragged six or seven feet after she was struck. A colored policeman took the child from under the car.

Edwin J. Shannahan testified that he had made measurements for the plaintiffs, and that it was seventeen feet and four inches from the south curb to the rail at the alley; that it was sixty-one feet and seven inches from the alley to Grand Avenue, and twenty-nine feet and one inch east of the east line of the alley to the east line of the door in Barman's place; that the vacant lot alluded to by Chapman in his testimony was over forty feet west of Mrs. Barman's door, out of which the child came.

Mrs. Bernstein testified that she was coming from

Grand Avenue into Third Street; that when she was six or seven feet from the corner of Grand Avenue, she saw the child coming from the sidewalk into the street and also saw the car coming; she hallooed to the motorman to stop the car, but he paid no attention, he was looking towards the north side of the street (all the testimony showed that the child came from the south side of the street). Mrs. Bernstein testified that she hallooed when the child was leaving the curb of the sidewalk. At that time the car was fifty or fifty-five feet west of the place where it struck the child. She testified further that no bell was rung, and that the child was walking and did not stop.

Mrs. Emma Bernstein testified that she saw the child and then saw the car about fifty feet on the other side of the alley. She raised her hand and hallooed to the motorman, but he was looking to the other side. He paid no attention. No bell was rung.

Lee J. Hill testified that he was an ex-motorman; that he had operated similar cars to this one over similar grades; that this grade was three or four per cent, and in this connection it may be remarked that Mr. Satterlee, defendant's assistant superintendent, corroborated this witness as to the grade of the track. Hill testified that this car, under the circumstances in evidence, could have been stopped within ten to fifteen feet. The motorman himself testified that he stopped the car within from twenty to twenty-five feet.

The father of the deceased child testified that at the time the child was hurt, he was at work in his shop on the north side of Third Street between Grand Avenue and Walnut Street and just east of the alley, which extends south through the block; that there was no window in the west side of his shop, but there were large windows in the front; that he could see about fifty feet up towards Walnut Street through the front window; that from time to time he looked across the street and saw his children over in Mrs. Barman's store; that

he saw the car that injured his child when it was about fifty feet west of the alley; that the motorman was looking towards the north side of the street and upward at the point above witness's shop; that he heard no bell.

Irvin Schofield, on behalf of the defendant, testified that he was the motorman in charge of the car which killed the child and that the accident happened at 4:55 p. m. He said, ''Well, I was coming from Third and Walnut going down towards Grand; I got probably two-thirds of the way down. There is an alley there; I got somewhere close to the alley, maybe not quite to it, or maybe a little past it, and ahead of me between the curbing and the rail, I seen a little child starting towards the track running fast, and I seen that we were going to come together, the way we were going, and I hallooed, 'Look out!' at the child, just like that, as loud as I could, and applied the brakes at the same time. By that time we had pretty near come together, we had come close and the little child ran right in ahead and back of the fender and fell back and I had the car pretty near stopped.'' On cross-examination he testified that he did not see the child on the curb; that she was probably half way between the curbing and the rail when he first saw her, and she was running towards the track. The only thing he did to avert the injury was to apply his brake and hallooed to the child. He was moving five or six miles an hour; that he was about to the alley when he first saw her; that he stopped the car with a hand brake within from twenty to twenty-five feet.

Peter Campbell, a witness for the defendant, did not hear the bell ring; he was a police officer; that he and Sergeant Lynch and Mr. Thompson were standing somewhere near Third Street and Grand Avenue, looking west up Third Street, and saw some children playing on the sidewalk up the street; saw a little girl start across the street; at the time she started the car

was about opposite her, she started due north across the street and when near the track turned northeast and ran between the fender and the bumper of the car and was knocked down. The car ran three or four feet after she was struck. The front wheel mashed the child's leg. She was not on the track or in front of the car. Witness took the child from under the wheel. The child ran faster than the car when she started towards the track. The motorman made a quick stop. He did not think the motorman knew what had happened. "Q. You do not think then that he saw the child? A. I do not think he did. Q. He did not give any evidence or make any alarm which would indicate as far as you heard? A. No, sir, of course the child began to hollo and I holloed and he stopped. I holloed and told him to back up, of course he knew there was something wrong there and then he backed up."

Jerry Lynch, a sergeant of the police, testified in behalf of the defendant. His evidence is substantially the same as that of Peter Campbell, except that he testified that the motorman hallooed, but he did not hear any bell rung, and that at the time the child hesitated in the street the street car was close to the alley.

William Spenamen, for the defendant, testified that he was looking out of his window on the north side of the street, did not see the accident, but saw the child start to run across the street and the car came between him and the child and he did not see her any more; that when the child was stepping off of the curb the front of the car was about at the west line of the alley. When the child was half way between the curb and the track the car was about one hundred feet west of the little girl. The first motion on the part of the motorman to use his brake was after the car had gotten across the alley.

This was substantially the evidence in the case.

At the close of the evidence the defendant requested an instruction in the nature of a demurrer to the evidence, which was refused. The court then instructed the jury, and the jury returned a verdict for the defendant, and thereupon plaintiffs filed their motion for new trial, alleging among other grounds that the court erred in giving instructions as asked by the defendant. The court sustained the motion for new trial on the ground that it had erred in giving instruction number 3A on behalf of the defendant and from this order the defendant takes its appeal to this court.

Said instruction number 3A is in these words: "The court instructs the jury that the fact that a person leaves the sidewalk and comes near the track is not enough in itself to impose the duty on the motorman to stop the car; there must be something noticeable in the conduct of the person coming towards the track to apprise the motorman that such person is about to enter into a position of danger, to make it incumbent on the motorman to stop the car. Now, if the jury believe from the evidence, that the motorman saw the child leave the sidewalk and come into the street and stop before getting to the track, then the motorman in charge of the car in controversy had the right to proceed with his car, and he was not required to stop the car until there was a movement by the child which indicated that it was about to run into a position of danger; and if the motorman, after seeing the child start towards the track after making its last stop in the street, used ordinary care with the means at his command, to stop said car and prevent a collision with the child, then there was no negligence, and the plaintiff cannot recover in this case, and the jury must return a verdict for the defendant company."

I. The defendant insists that the order of the circuit court granting plaintiffs a new trial should be

reversed because the court erred in reaching the con-
clusion that its instruction number 3A, given in behalf
of the defendant, was erroneous, and asserts that the
said instruction correctly stated the law. The state-
ment in that instruction "that the fact that a person
leaves the sidewalk and comes near the track," is not
enough in itself to impose the duty on the motorman
to stop the car; that there must be something notice-
able in the conduct of the person coming towards the
track to apprise the motorman that such a person is
about to enter into a place of danger, to make it incum-
bent upon the motorman to stop the car, "is well
enough when the person is an adult," but it is inap-
plicable to a child of the tender years that the deceased
child of the plaintiffs was in this case. On the con-
trary, numerous cases in this court assert the doctrine
that when a child of tender years, as the plaintiffs'
child was in this case, is seen by the engineer or mo-
torman in charge of a train or car, approaching the
track in its front, then he sees the child is in a perilous
or dangerous position.

In Cytron v. Railroad, 205 Mo. 1. c. 719, it was said
by this court In Banc: "The motorman knew his car
was bound to occupy, with crushing force, the very
spot the child's steps were directed to. It was obvious
to the motorman that the child did not know that
fact." Under such circumstances it was said, "Both
danger and duty began the instant the child left the
sidewalk, bound headlong into peril." [Livingston v.
Railroad, 170 Mo. 452; Meeker v. Railroad, 178 Mo.
1. c. 176; Heinzle v. Street Ry. Co., 213 Mo. 1. c. 114;
Cornovski v. Transit Company, 207 Mo. 263.] In this
last mentioned case it was said: "Our very instinct
teaches us that when a four-year-old child, unattended,
leaves the curb of a sidewalk—that is, leaves a place
of comparative safety—and heads across a street de-
voted to traffic in a great city, with a car track twelve
feet away on which a car is approaching, the little one

as surely and instantaneously plunges into danger as that the square of the hypotenuse of a right-angled triangle equals the sum of the squares of the other two sides; i. e., speaking broadly, it is axiomatic. Danger to the child and duty on the motorman's part began the instant such a child left the sidewalk, bound headlong for the track. [Cytron v. Railroad, 205 Mo. l. c. 720; Livingston v. Railroad, 170 Mo. 452.]"

We are cited, however, by the defendant to the decision of the Kansas City Court of Appeals in Gabriel v. Railroad, 130 Mo. App. 656, in which that court, in speaking of a child of six years of age, used this language: "But there was no evidence that there was any action upon the part of the child to indicate that she was unaware of her danger in time for the defendant's motorman to have avoided striking her. The mere fact that a person is on the street with the evident purpose of crossing it while a car is approaching, is no evidence in itself that he intends to place himself in a position of peril." Citing Reno v. Railroad, 180 Mo. 469. Reno v. Railroad was a case in which an adult was the plaintiff who walked across the street-car track in broad daylight, when there was no obstruction either way, but that case, as is pointed out in Heinzle v. Railroad, has no application to a case of a minor child of tender age, who is incapable of contributory negligence, and that decision did not follow the decisions of this court on this point.

But counsel say that this statement in the instruction is a mere abstract statement of the law, and we infer from this that in his opinion, even though it should be held erroneous with reference to the facts in evidence in this record, still it would not justify the circuit court in granting a new trial on account of its error. The remainder of the instruction must be considered, and it is in these words: "Now if the jury believe from the evidence that the motorman saw the child leave the sidewalk and come into the street and

*stop* before going to the track, then the motorman in charge of the car in controversy had the right to proceed with his car, and he was not required to stop the car until there was a movement by the child which indicated that it was about to run into a position of danger.'' The plaintiff's challenge the predicate of this part of the instruction, because they insist that the fact that the child stopped for an instant, or hesitated in its movement towards the train, did not absolve the motorman from the duty of taking precaution to prevent its injury and death. Defendant insists, however, that this instruction is based upon the plaintiff's own evidence in the case, and contends that the witness Chapman testified that he saw the little girl playing in the street near the curb and the fact that she was playing or standing there, and when she started to cross the street, whether she was playing just off the curb or just on the curb, would not affect the matter, because, in either event, the motorman was not bound to stop the car, or slacken the speed of it, until there was something to indicate the purpose of the child to cross the street. We have carefully examined this evidence of Chapman and the other testimony in the case, and while some of the witnesses speak of other children being along there, neither Chapman nor any other witness states that *this child* was playing in the street, or on the sidewalk at any time. The witness Chapman states that he saw the child step off of the curb, and start across the street, and when it had gone a few feet it stopped, and then, to use the language of the witness, ''toddled on toward the track.'' The instruction directs the jury that if the motorman saw the child leave the sidewalk and come into the street and *stop* before going to the track, then the motorman was under no obligation to stop his car. When the whole evidence of Chapman and others is taken into account, with the necessarily short time within which the whole transaction occurred, it.

is perfectly obvious, we think, that the child only made a momentary stop or hesitation, either from confusion at seeing the wagon cross or from childish indecision, but whatever the occasion of the stop, and even though the motorman might have seen its action from the time it left the curb, and understood the likelihood that it was going to continue its journey across the track, under this instruction, the motorman was free from any duty towards the child to prevent its injury at all after it made a subsequent start across the track. We think the instruction is too strong in this respect; it was not enough that the child merely stopped and hesitated, to give the motorman the right to proceed, but it must have been such a *stop* as gave him the idea that the child did not intend to go forward; if it looked like the stop was a mere pause or hesitation, as was testified to by various witnesses, it was his duty to have stopped his car before the child made the further movement which indicated that it was about to run into a position of danger. The size of the child, its extreme infancy, its position in a public street, upon which ponderous cars were constantly running, its having left a place of safety on the sidewalk, and started to cross the street, was enough to warn the motorman that it might capriciously proceed in its journey and enough to cast upon him the duty of stopping his car until the danger to the child was past.

In Jones v. Railroad, 201 Pa. St. 344, the injured child was not upon the track, but was walking upon another track upon which cars ran in an opposite direction, and the Supreme Court said: "She was not at that time, it is true, on his track [that is, the track of the motorman whose car ran over her] *but he was bound to know that in her childish caprice she was as likely to cross over in front of his moving car as to go back to the pavement,* and his duty the instant he saw her, or if exercising proper care and watchfulness, he ought to have seen her, was to stop or to so

absolutely control his car as to avoid the risk before him.''

Counsel for defendant properly concede that this court and other courts of last resort have placed the danger line for children further away from the track than for adults, and have held that it is the duty of a motorman to begin to stop his car sooner for children than for adults who are presumed to know the danger and to stop before going upon a car track, but insist that even these cases do not require a motorman to stop his car until there is some movement of the child indicating its intention to cross the track or come near enough to the car to put itself in danger of being struck, and this is what this instruction declares, and it is in this that the error lies. We think this court announced the true rule as to children of tender age in Cornovski v. Transit Co., 207 Mo. l. c. 274, when it said: "Danger to the child and duty on the motorman's part began the instant such a child left the sidewalk, bound headlong for the track." Present in the street where horses, wagons, and cars were constantly moving in broad daylight, a child less than four and a half years old, with only a few feet between the curb and the car track, with its face to the track, every instinct of a normal man and universal experience teach him that the child is already in imminent danger, and the law having regard for human life requires a motorman in charge of a ponderous car on a public street to stop until the danger to the child is averted. He is not to speculate that it may not run upon the track, and cannot indulge the presumption which he may indulge as to adults that it may not go into further danger; it has already entered into the danger zone. As said by the Supreme Court of Pennsylvania: "He was bound to know that in her childish caprice she was as likely to cross over in front of his moving car as to go back to the pavement, and *his duty* the instant he saw her, or if exercising proper care

and watchfulness, he ought to have seen her, *was to stop* or to so absolutely control his car as to avoid the risk before him.'' The mere temporary stop of the little child, caused either by its caprice or hesitation on account of the wagon or car, did not absolve the motorman from his duty to stop his car until danger to the child was certainly averted, but this instruction did, and the jury were told that his duty only arose or began when the child again started on its journey to its destruction. Thus instructed the jury might well have found that after that last start the motorman could not have stopped his car in time to have prevented the injury and death of the child, and hence they must find for defendant.

Moreover, this instruction was erroneous because it assumes there was evidence that the motorman saw the child leave the sidewalk and *stop,* whereas the motorman himself testified he first saw the child when it was only a few feet from the track, and another witness, officer Campbell, testified he did not think the motorman saw the child at all until the collision had occurred, and other witnesses testified the motorman was looking upward in the opposite direction from that from which the child approached the train. The instruction concludes: ''If the motorman after seeing the child start toward the track after making *its last stop* in the street, used ordinary care with the means at his command, to stop said car and prevent a collision with the child, then there was no negligence and the plaintiff cannot recover in this case and the jury must return a verdict for defendant.'' In a word, the jury were told that if the motorman used ordinary care after he saw the child start towards the track after making its last stop, then there was no negligence and no liability. Every other fact was eliminated from their consideration, nothwithstanding there was evidence tending to show the motorman was negligent in not seeing the child and the jury might have believed

that by the exercise of ordinary care he would have seen her in time to have avoided injury to her, and the instruction wholly ignored the testimony as to his failure to ring the bell and the efforts of bystanders to warn him of the child's peril.

Especially harmful was the making the "last stop" the point when the duty of the motorman began, inasmuch as there was testimony that the little child stopped first at the edge of the curb and then other testimony that it made another stop and then toddled on toward the track, and under this part of the instruction the jury were given to understand that the motorman was required to take no step to stop until after this *last* stop, though the whole evidence shows it was only momentary. Officer Campbell, a witness for the defendant, testified that she might have stopped a second, not over that any way.

In our opinion this instruction was erroneous and harmful and occasioned the verdict against plaintiffs, and the circuit court did not err in so holding and in granting a new trial on that account.

II. But it is urged that even though the instruction was erroneous, the circuit court erred in granting a new trial because the court ought to have sustained the demurrer to the evidence and taken the case from the jury. The statement of the facts already set forth we think required the court to submit the question of defendant's negligence to the jury under the first instruction given in behalf of plaintiffs, without the instruction 3A given in behalf of defendant.

III. As to the proposition that the verdict was for the right party, it is sufficient to say that the plaintiffs' evidence entitled them to have the jury pass upon the negligence of defendant under proper instructions, and we have held they did not have that privilege, and the learned circuit court so held.

231 Sup.—6.

There are instances in which the appellate court has well said that notwithstanding the circuit court has given an improper or incorrect instruction, the whole record showed that the verdict was right and the judgment would not be reversed where it was evidently for the right party. Under the evidence in this case there was an issue for the jury under proper instructions and it is not our province to pass upon the weight of the evidence.

It should also be said that instructions numbered 4 and 8 were improper in that they submitted to the jury whether the plaintiffs were guilty of contributory negligence in permitting the child to be upon the street. We think there was no evidence tending to show the plaintiffs were negligent in this regard.

In our opinion the circuit court had the right to grant a new trial and there was no error in its action in so doing, and the judgment is therefore affirmed.

*Burgess, J.,* concurs; *Kennish, J.,* not having been a member of the court when the cause was argued, takes no part in the decision.