PAUL TURNBOW, By His Next Friend, ORAH TURNBOW, Appellant, v. R. J. DUNHAM et al., Receivers of METROPOLITAN STREET RAILWAY COMPANY.

Division Two, July 27, 1917.

1. **NEGLIGENCE: Child Near Track: Ordinary Care Towards Persons.** An instruction telling the jury that "a motorman in charge of a street car is only required to exercise towards persons near its tracks ordinary care to prevent injury to persons if near the track" would not by using the word "persons" cause the jury to infer that a three-year-old child is to be considered as an adult, and is not error.

2. ————: ————: **Precaution After Danger Seen.** An instruction which tells the jury that before they can find for plaintiff they must find that defendant's motorman was guilty of negligence in not taking such precautions as a reasonably prudent person would have done under the same circumstances, to avoid injuring the three-year-old child, in the street between the curb and track, "after the motorman saw him in a position of danger from being run over by the rear wheels of the car," is erroneous. The rear wheels having run over the child's feet, the instruction relieved defendant of liability if the motorman failed to see him in a position of danger from being run over by them, whether such failure to see was or was not the result of the motorman's negligence.

3. ————: ————: **Use of Word Ran.** An instruction that assumed that the three-year-old child "ran" towards the car as it passed, where there is no evidence that he ran, while not reversible error, would be more technically accurate if it used the word "move."

4. ————: ————: **Contest Between Persons of Equal Standing.** Where the rear wheels of a street car ran over the feet of a three-year-old child, and he sues for damages, an instruction telling the jury that the case should be "considered the same as if it was a contest between two persons of equal standing in the community" should not be given, because it is apt to mislead the jury into believing that the defendant owed to the child no greater duty to look out for its safety than it owed to an adult under like circumstances.

5. ————: **Unavoidable Accident: Instruction.** Where the issue raised by the facts is simply one of negligence *vel non* of the motorman, and there is no evidence of any accident within the proper meaning of the term, an instruction telling the jury that if they believe and find from the evidence that plaintiff's injuries were "due to an unavoidable accident and not to any negligence of the motorman," should not be given.

6. ————: **Approximate Cause: Undefined.** The use of the words "approximate cause" in an instruction, without defining or explaining the term, tends to mystify, rather than to aid the jury in reaching a correct conclusion.

7. ————: **Child in Street: Demurrer to Evidence.** When a demurrer to the evidence is considered, plaintiff is entitled to have it viewed in its most favorable light; and where there is evidence tending to show that a child less than three years of age, unattended, stepped from the curb into the street as the street car slowly approached; that as the front of the car passed him he was standing five feet from the track, to which position he had approached from the curb while the car had traveled twenty feet; that the motorman saw him and watched him only until the front trucks had passed beyond the position of the child, and then ceased watching him and started to increase the speed, a demurrer to the plaintiff's case of damages for negligence should not be given; for evidently after the front trucks passed, the child moved a step or two closer to the car and placed his hands against the side thereof (as some of the evidence tended to show) and was thrown off his feet and fell in such a way that his feet became entangled under the rear wheels, which ran over them. The motorman's duty of exercising ordinary care for the child's safety was not fully performed by watching the child only until danger from the front trucks was passed.

8. ————: ————: **Moving Car Slowly: Lookout.** A motorman seeing a child of tender years on the street moving towards the track does not by moving slowly relieve himself of the duty of keeping a lookout for the child until it is out of danger.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone,* Judge.

REVERSED AND REMANDED.

*John N. Southern* for appellant.

(1) The use of the words "person" and "persons" approaching the tracks of a street car, in respondents' instruction, does not express the law of this case, but the contrary. And the use of the word persons in defendant's instruction number six also erroneously directed the jury in the case at bar. Simon v. Railroad, 231 Mo. 74; Childers v. Railroad, 141 Mo. App. 684. (2) There was no evidence to support instruction given for defendant to sustain the proposition that the motorman took precautions to avoid injuring the child, at the time the front trucks safely passed him, the appellant herein, but positive evidence to the contrary. It assumes facts not in evidence and eliminates essential elements from consideration of the jury. Simon v. Railroad, 231 Mo. 80; Schumaker v. Breweries, 247 Mo. 161; Sinamon v. Moore, 161 Mo. App. 168; Bouillon v. Laclede Co., 165 Mo. App. 321; Kendrick v. Davis, 156 S. W. 490. (3) The court erred in giving for respondent instructions assuming that there was evidence that the child ran from where the motorman claims to have seen him, when the front trucks passed him, to and under the rear wheels of the car. The record contains no evidence to that effect. Eckhard v. Transit Co., 190 Mo. 620; Shanahan v. Transit Co., 109 Mo. 233. (4) Respondent's instructions on proximate cause, are not applicable to this cause, for the reason that the appellant, at the time of the injury, was a mere child and known to be so by the motorman, at the time of the collision resulting in the injuries. Simon v. Railroad, 231 Mo. 75; Cytron v. Railroad, 205 Mo. 719; Meker v. Railroad, 178 Mo. 186; Livingston v. Railroad, 170 Mo. 470; Gringle v. Railroad, 213 Mo. 114; Cornovisky v. Transit Co., 207 Mo. 273. (5) Respondent's instruction that "If appellant's injuries were the result of unavoid-

able accident and not the negligence of motorman," was reversible error. Simon v. Metropolitan, 178 S. W. 450. (6) The plaintiff under all the testimony in the case was entitled to a verdict in his favor and his motion for a new trial should have been sustained. Cytron v. Railroad, 205 Mo. 720; Livingston v. Railroad, 170 Mo. 452; Simon v. Railroad, 231 Mo. 74. (7) In respondents' instruction number 2, the court instructs the jury they must find "that defendant's motorman was guilty of negligence in not taking such precautions to avoid injuring the plaintiff after the motorman saw him in a position of danger, if you believe he was in a position of danger, from being run over by the rear wheels of the car, as a reasonably prudent person would have done under the same circumstances, and unless you so find, then, plaintiff cannot recover in this case and your verdict must be for the defendants," omitting to include in the instruction the necessary phraseology of the motorman's duty, "or by the exercise of ordinary care, might have seen him in a position of danger." This is fatal error and takes from the consideration of the jury, whether the motorman could, in the exercise of such care, have seen the child approaching the car, after it had stepped from the curb into the street.

*L. T. Dryden* for respondents.

(1) The defendant's peremptory instruction in the nature of a demurrer to all the evidence should have beeen sustained, no negligence whatever upon the part of the motorman having been shown. 2 Nellis on Street Railways (2 Ed.), p. 937, sec. 410; Budger v. Albany St. Ry. Co., 42 N. Y. 459; Boland v. Railroad Co., 36 Mo. 492. (2) These instructions, it seems need only be read to convince the court that they correctly state the law if the appellant was entitled to go to the jury at all. The first simply told the jury that the motorman should have exercised such care as a reasonably prudent person under the circumstances would have done. The second calls the jury's attention to the fact that because the real defendant in the case was a corporation should

not in anywise mitigate against it in arriving at a verdict. Feary v. Metropolitan St. Ry. Co., 162 Mo. 97; State v. Talbott, 73 Mo. 347. (3) Complaint is made that the term "proximate cause" is not defined, and that the instructions are not applicable to this case. The term "proximate cause" is defined in instruction 9. The jury unquestionably understood that by the term "proximate cause" was meant the negligence of the motorman as defined in other instructions that caused the unfortunate accident. Battles v. Railroad, 178 Mo. App. 596; Kelley v. Railroad, 75 Mo. 138; Warner v. Railroad, 178 Mo. 125; King v. Railroad, 211 Mo. 1; McGee v. Railroad, 214 Mo. 544; Schmidt v. Transit Co., 140 Mo. App. 182. (4) Appellant complains of instruction 2, given at the instance of respondents. There might be cases where the evidence would be such that the instructions ought to be as contended by appellant's counsel; but in this case there are two reasons why this instruction correctly stated the law as applicable to the facts in this case, to-wit: First, the motorman himself testified that he saw the child when he started the car from the west side of Union Street and until after the front part of the car had passed it. So it was not a question of what he might have seen, because he actually did see, and the question here is what he should have done under the admitted fact that he actually saw the child. Second, appellant submitted the case under this theory as will be seen by instruction 1 as amended by the court, given at the instance of appellant.

WILLIAMS, J.—Plaintiff, a minor three years of age, sues, by next friend, to recover the sum of thirty thousand dollars for the loss of both feet. The injury is alleged to have been caused by the negligence of the defendant in the operation of its street car. Trial was had in the circuit court of Jackson County, at Independence, resulting in a verdict for the defendant. Plaintiff has duly appealed.

The evidence was substantially as follows:

The injury occurred about six p. m., March 29, 1912, near the point where the east line of Union Street intersects Lexington Street at Independence, Missouri. Lexington Street, upon which the defendant's double street-car tracks are situated, runs east and west. Union Street crosses it at right angles. A grocery store is on the south-east corner of this crossing. The car which injured plaintiff was an east-bound car, operated on the south tracks. Union Street, at its intersection with the south line of Lexington Street, was forty feet in width. The distance from the curbing, in front of the corner grocery store, to the south rail of the south track, was ten feet and five inches. Just prior to the accident the car in question made a stop on the west side of Union Street for the purpose of discharging passengers. One passenger alighted. Signal was then given for the car to start and the motorman started the car in the ordinary way and had proceeded to a point where the rear trucks of the car were almost directly north of the center of the grocery store, when a scream was heard and the car was brought to an immediate stop; some witnesses saying that it stopped in five or ten feet, others saying that it went as far as twenty-five feet. The scream heard was that of the plaintiff, and he was found lying with his feet (crushed) upon the south rail and his head and body toward the south. He was immediately taken to a near-by undertaking establishment, and the undertaker bound his limbs with a cord to stop the flow of blood. He was shortly removed to a hospital. Upon examination, amputation was found to be necessary, which was accordingly performed. Both feet were amputated a short distance above the ankle. In about two months the amputated limbs had healed and, later, at the trial, plaintiff was able to walk upon artificial limbs.

A lady passenger on said car was standing near the front vestibule, and as the front of the car passed the grocery store she saw the child standing in the street at a point about half way between the car and the curb. The child was facing the car. The witness said the child might have been walking slowly, but she was not sure.

After the car had moved a short distance she heard a child scream, and the car was stopped and the injured child picked up.

One of the gentlemen passengers testified that as the car was crossing Union Street he saw the motorman look out the door and heard him apply the air. The witness then looked out the window to see what the trouble was, and saw the child lying face downward with its feet on the track, about one foot in advance of the rear trucks. Immediately thereafter the child screamed and the car was brought to a stop.

A clerk in the corner grocery looked out as the car was passing. He states that it looked like the child had his hands on the side of the car along about the center of the car. He saw the little boy fall and the rear wheels run over his feet. This witness was the first one to the injured child. He picked the child up, carried him in and called a doctor.

Plaintiff used the motorman as a witness. The motorman testified that he first saw the child just as he started his car from the west side of Union Street. At that time the child was on the sidewalk in front of the grocery store. About the time the front of the car reached the center of Union Street, he saw the child step down into the street, facing north and looking into the motorman's face. When the motorman saw the child step into the street he states that he turned off the power, lowered the speed to about one mile an hour, so that the car was barely moving, and got the car under perfect control. He stated that he could not tell what the child would do; that he feared the child would get in front of the car and for that reason took the above precautions. He stated that the child did not take any further steps after stepping into the street, but was standing in that position (a distance of eight or nine feet from the south edge of the car) when the front end of the car passed the child. The motorman last saw the child through the door of the front part of the car. The child was then at a point due south of the front trucks and, according to the motorman's testimony, was

standing at the same position as above described. After the front trucks passed the child the motorman says that he "fed up" or increased the speed of the car; that he thought the child was safe after the front trucks had passed the child. In a few seconds he heard the child scream and immediately stopped the car. The evidence shows that the clear space between the front and the rear trucks was about twelve feet in length, and that the distance from the center of the rear wheel on the front truck to the center of the front wheel on the rear truck is sixteen feet and six inches. The body of the car extends fifteen inches beyond the rail.

The defendant introduced in evidence the original petition in the case for the purpose of showing that under the allegations of that petition it was stated that the child stood in the street, and that the petition contained no allegation that at any time the child was approaching or attempted to cross the street.

In rebuttal the plaintiff offered a portion of the motorman's deposition which was taken after the original petition was filed. In the deposition the motorman was reported as testifying that he first saw the child next to the curb and that the child took a step or two towards the car. This was offered for the purpose of explaining why the amended petition was filed.

Appellant attacks defendant's instructions 1, 2, 3, 4, 6, 7 and 8 which were as follows:

"1. The court instructs the jury that a motorman in charge of a street car is only required to exercise toward persons near its tracks ordinary care to prevent injury to persons if near the track and if he does this he is guilty of no negligence. If you believe that the motorman, Sherman, did all that a reasonably prudent person under the same circumstances would have done to prevent injury to plaintiff, then he was guilty of no negligence and plaintiff cannot recover in this case and your verdict must be for defendant.

"2. The court instructs you that before plaintiff is entitled to recover in this case plaintiff must show to your reasonable satisfaction by a preponderance of

Turnbow v. Dunham.

the credible evidence, that is, by the greater weight of the credible testimony offered in the case, that defendant's motorman was guilty of negligence in not taking such precautions to avoid injuring the plaintiff *after the motorman saw him in a position of danger,* if you believe he was in a position of danger, from being run over by the rear wheels of the car, as a reasonably prudent person would have done under the same circumstances, and unless you so find, then plaintiff cannot recover in this case and your verdict must be for the defendants.

"3. The court instructs the jury that if you believe and find from the evidence in this case that at the time *the front trucks of the car safely passed the plaintiff,* he was standing still and that there was nothing in his manner to indicate to the motorman that the child would run against the car or under the rear trucks and that a reasonably prudent person situated as the motorman was, would not have reasonably anticipated that the child would run under the rear trucks of the car and that the motorman took all the precautions to avoid injuring the child that a reasonably prudent person would have done under the same circumstances then plaintiff cannot recover in this case and your verdict must be for the defendants.

"4. The court instructs the jury that if you believe and find from the evidence that a reasonably prudent and careful person placed in the position of the motorman at the time would not have reasonably anticipated that plaintiff, *after the front trucks of the car had safely passed him,* under all the facts and circumstances detailed in evidence, would run against the car or under the rear trucks, then the motorman, Sherman, did all that was required of him, and he was guilty of no negligence, and plaintiff cannot recover, and your verdict must be for the defendants.

"6. The court instructs the jury that this case should be considered by you the same as if it was a contest between *two persons of equal standing in the community;* the fact that one of the parties is a corporation

should not and must not affect your minds in any way in the consideration of the case; the rights of the parties should and must be determined upon the evidence introduced, and the instructions given to the jury, which are the law and the only law to guide you in your deliberations.

"7. The court instructs the jury that if you believe and find from the evidence that plaintiff's injuries were *due to an unavoidable accident* and not to any negligence (as defined in other instructions) on the part of defendants' motorman in the management of defendants' car, at the time, then plaintiff cannot recover, and your verdict must be for the defendants.

"8. The court instructs the jury that in this case the burden of proof rests upon the plaintiff to prove to your reasonable satisfaction, by the preponderance of the credible testimony, that defendants were guilty of negligence as submitted to you in these instructions; and unless you believe and find from the evidence in this case that the plaintiff has proven, by a preponderance of the credible testimony, to your reasonable satisfaction that the defendants were guilty of negligence as defined in these instructions, and that such negligence was the *proximate cause* of the injuries complained of, then you cannot find for the plaintiff."

I. It is contended by appellant that the court erred in giving defendant's instructions, numbers 1, 2, 3, 4, 6, 7 and 8. The instructions will be found copied in full in the foregoing statement.

It is contended that the use of the word "persons" in instruction numbered 1 is erroneous; that it has the effect of classifying plaintiff as an adult and is subject to the criticism given a similar instruction in the case of Simon v. Railway, 231 Mo. 65, 1. c. 74-75. We do not agree with appellant's contention in this regard. The instruction criticized in the Simon case was entirely different from the one now before us. In the Simon case the instruction told the jury that "the fact that a *person* leaves the sidewalk and comes near the track is not enough in itself to im-

Instruction No. 1.

pose the duty on the motorman to stop the car." The court held that the above was a proper declaration of the law as to an adult approaching the tracks, but was inapplicable when a child of tender years approached the tracks. The instruction in the case at·bar declares it to be the duty of the motorman to exercise ordinary care to prevent injuring persons near its tracks. We find no fault with that statement of the law. It was the duty of the motorman to exercise ordinary care to prevent injuring persons near the tracks, whether they were adults or children of tender years. There is nothing in the instruction which would cause the jury to infer that the plaintiff in this case was to be considered as an adult for the purpose of determining the requirements of the duty to exercise ordinary care, imposed upon the motorman.

The second instruction, in effect, told the jury that before they could find for the plaintiff they must find that defendant's motorman was guilty of negligence in not taking such precautions as a reasonably prudent person would have done under the same circumstances, to avoid injuring the plaintiff, *after the motorman saw him in a position of danger from being run over by the rear wheels of the car,* etc.

Instruction No. 2.

We think the above instruction clearly erroneous. By that instruction the defendant was virtually relieved from liability if the motorman *failed* to see plaintiff in a position of danger *from being run over by the rear wheels of the car,* whether such failure to see was or was not the result of negligence upon the part of the motorman. That the child did get into a position of danger from being run over by the rear trucks is very clear from the evidence; because he was, as shown by all the evidence, run over by the rear wheels of the car. It also appears from the evidence that the motorman did not see the child just as it was approaching or about to come in contact with the rear wheels. So far as the testimony discloses, the motorman last ·saw the child when he was standing alongside of the front trucks and

a few feet out from them. The motorman could have seen the child approach the track and come within danger of the rear wheels had he been looking out at the child. Did ordinary care, under the circumstances, require him to look and see? We are not called upon to answer that question *as a matter of law* but it was certainly an issue of fact that the jury should have passed upon. If the motorman saw *or could, by the exercise of ordinary care, have seen* the plaintiff in a position of danger from being run over by the rear wheels then it was certainly his duty to use ordinary care to prevent the injury. The instruction, therefore, erroneously omits from the jury's consideration the important question of fact as to whether or not the motorman could, by the exercise of ordinary care, under the circumstances, have seen the child in a position of danger from being run over by the rear trucks.

It is contended that instructions three and four are erroneous in that they each assumed that the child "ran" from the point where the motorman last saw him, to and under the rear tracks, and that there is no evidence that he "ran" under the car. Technically speaking, perhaps the use of the word "run" in the instruction is improper. The word "move" would better express the correct idea. It does appear from the evidence that he moved from the curb to a place under the wheels; whether he walked or ran does not appear. No doubt, however, the word "run" was intended to be used in the sense of "move" and was so understood by the jury. We are unwilling to say that this slight mistake, under the facts of this case, would amount to reversible error, but, since the case must be retried, we suggest that the matter be corrected if the facts remain the same and the instruction should be again offered.

The sixth instruction told the jury that the case should be "considered the same as if it was a contest between two persons of equal standing in the commu-

*Instructions 3 and 4.*

nity." This instruction, when applied to a case wherein the parties are adults, or where one is an adult and the other a corporation, has been held to announce a correct rule of law (Feary v. Met. St. Ry. Co., 162 Mo. 75, l. c. 97); but where, as here, one of the parties is a mere infant three years of age, the instruction should not be given, because it is apt to mislead the jury into believing that the infant plaintiff should be considered in the status of an adult so far as the duties of the defendant to look out for its safety was concerned. An ordinarily prudent person, exercising ordinary care for the safety of others, would certainly be expected to exercise greater precaution to protect a child near the track than would be required in protecting an adult. The adult is presumed, in a certain measure, to look out for his own safety. No such presumption surrounds the treatment to be accorded a more infant.

*Instruction No. 6.*

The seventh instruction should not have been given in this case, because there was no evidence of any accident within the proper meaning of that term. The issue raised by the present facts was simply one of negligence *vel non* of the motorman. Under such conditions the instruction should not be given. [Simon v. Metropolitan St. Ry. Co., 178 S. W. 449, wherein the decisions on the question are reviewed; Wise v. Transit Company, 198 Mo. 546, l. c. 559-560.]

*Instruction No. 7.*

The eighth instruction is subject to criticism because it uses the term "approximate cause" without defining or explaining it. It was said in the case of Montgomery v. Railroad, 181 Mo. 508, l. c. 513, that the use of the term "proximate cause" unexplained in an instruction would tend to mystify rather than aid the jury in reaching a correct conclusion. Subsequent instructions for defendant, in the present case, did, in a way, tend to explain the term, we think, and for that reason the use of the term may not have resulted in error in this case. The purpose of instruc-

*Instruction No. 8.*

tions, however, is to enlighten, not to mystify, the jury and, since the case must be retried, we would suggest that the instructions as to this point be made clear, so that all danger of the jury being misled thereby may be obviated.

Other errors urged by appellant are not such as will likely reoccur upon another trial. For that reason we deem their discussion now unnecessary.

II.   It is contended by respondent that even though it be conceded that error occurred in the giving of some of defendant's instructions yet the judgment should not
be reversed because it was for the right
**Demurrer** party; that defendant's demurrer to plain-
**to** tiff's evidence offered at the close of the case
**Evidence.** should have been sustained because the plain-
tiff failed to make even a prima-facie case for the jury's consideration.

We are unable to agree with the contention that the case should not have been submitted to the jury. In passing upon a demurrer to the evidence, plaintiff is entitled to have the same viewed in its most favorable light.

There was evidence in this case tending to show that this little child, less than three years of age, stepped from the curb into the street as the car slowly approached; that as the front of the car passed the child he was standing half way between the car and the curb (if that were true the child was approximately five feet from the nearest rail); the motorman saw the child and watched him only until the front trucks had passed beyond the position of the child; the motorman then ceased watching the child and started to increase the speed of the car; he explains that his reason for watching the child up to that point was because "You can't tell what a child will do." Evidently after that time the child moved a step or two closer to the car and placed its hands against the side thereof and was thrown off its feet and fell in such a way as to engage his feet under the rear wheels of the car.

Under the above conditions, can it be said, *as a matter of law,* that defendant's duty to exercise ordinary care to protect the child from injury had been performed when it merely watched long enough to see that the child was not injured by the front trucks and that a like duty did not also exist with reference to preventing injury from the rear trucks?

Would all reasonable minds agree in saying that when a child three years of age is seen, unattended, standing within five feet of a street car track (to which position he had moved from the curb while the street car, moving very slowly, had approached a distance of twenty feet, half-way across Union Street) the duty of the persons operating the car, to exercise ordinary care for the child's safety, had been fully performed by watching the child until danger from the front trucks of the car was past and that no precautions should have been taken to protect the child from possible action on its part which might bring it within the danger of the rear wheels? We think not. Some reasonable minds might suggest that the child, because of its tender years and, therefore, its likelihod of "doing the wrong thing at the right time" was in a position of peril and that the car should have been stopped until the danger was averted. [Simon v. Railway, 231 Mo. 65, 1. c. 78]. Other reasonable minds might suggest that if the car were to be moved forward at all under the conditions there existing that it should be done in a watchful and careful way so that the car could be stopped in time to avert any actual danger that might develop. [Simon v. Railway Co., supra, 1. c. 78-80].

The mere fact that the car was moved very slowly while it passed the child does not relieve the situation. A car moved, slowly, without keeping a lookout for the child, was just as likely to injure the plaintiff as if it were moved rapidly. In fact the slower the movement the greater the time allowed for the child to move under the same.

The matter fully and carefully considered, we are of the opinion that it was for the jury, properly in-

structed, to determine whether the defendant performed its duty in exercising ordinary care, under the circumstances, to protect the child and prevent his injury.

The judgment is reversed and the cause remanded. All of the judges concur.